**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GREGORY RASPBERRY, ALBERT
CHRISTIAN MORALES, AND
JIMMY BROWN,

     Plaintiffs,                      Case No. 19-11651

v.                                Hon. Denise Page Hood

MADISON DISTRICT
PUBLIC SCHOOLS,

     Defendant.

_____/

**ORDER REGARDING DEFENDANT'S MOTIONS**
**FOR SUMMARY JUDGMENT [ECF Nos. 27, 29, 33]**

## I.    INTRODUCTION

In May 2019, Defendant Madison District Public Schools ("Defendant")

announced that it was terminating 21 employment positions, including those held by

Plaintiffs Jimmy Brown ("Brown"), Gregory Raspberry ("Raspberry"), and Albert

Christian Morales ("Morales"). Each of Brown and Raspberry promptly filed causes

of action against Defendant alleging violations of: (1) 42 U.S.C. § 1983 - due process;

(2) 42 U.S.C. § 1983 - free speech; (3) breach of just cause employment contract; and

(4) M.C.L. § 380.1229. Morales filed a cause of action alleging violations of: (1) 42

U.S.C. § 1983 - due process; (2) 42 U.S.C. § 1983 - free speech; (3) the Michigan

Elliot Larsen Civil Rights Act ("ELCRA"), based on race and national origin discrimination; and (4) ELCRA, based on race and national origin harassment. On October 30, 2019, the Court consolidated these cases. [1]

On February 5, 2021, Defendant filed a separate summary judgment motion with respect to each of Brown, Raspberry, and Morales. All three summary judgment motions are fully briefed. A hearing was held. Each of Brown and Raspberry has agreed to withdraw and voluntarily dismiss Count IV of his Complaint (the alleged violation of M.C.L. § 380.1229).

## II.   BACKGROUND

### A.   Plaintiffs

Brown was employed as Defendant's Athletic Director, a position he held for a number of years. In November 2018, shortly after the 2018 school board elections for Defendant, Brown entered into a three-year contract with Defendant as the Athletic Director for Defendant, at the salary he had been making, $90,000. Raspberry was employed as Defendant's Director of Enrollment and also coached football and girls' basketball for Defendant. Raspberry had a close working relationship with Brown.

---

[1]A fourth plaintiff, Michelle Fuller, filed a related cause of action against Defendant for violations of: (1) 42 U.S.C. § 1983 - due process; (2) breach of just cause employment contract; and (3) M.C.L. § 380.1229. Michelle Fuller and Defendant reached a settlement after Defendant filed a summary judgment motion, but before a response was filed, pursuant to a settlement conference with Magistrate Judge Anthony P. Patti.

In November 2018, again shortly after the school board elections, Raspberry received a new, three-year contract that increased his pay to $70,000 (from $60,000) and included new enrollment incentives.  Raspberry's contract contained the following termination provision:

> The Employee agrees to notify the District at least thirty (30) days prior to terminating this contract and/or employment in the school district. The Board shall be entitled to terminate the employment of the Employee upon 60 calendar day's written notice to employee during the term of this Contract for economic necessity or if the Employee fails to perform as required or desired.

ECF No. 27, Ex. 5 at ¶9.

Each of Brown's contract and Raspberry's contract was approved by a 6-1 vote by the members of Defendant's Board of Education (the "Board").  The six members of the Board who voted in favor of Brown's and Raspberry's contracts had recently been defeated in the 2018 Board elections.  Those six persons were no longer members of the Board when Brown and Raspberry were terminated in May/June 2019.

Morales held a number of positions with Defendant beginning in 1991, including teaching English and Spanish and serving as the principal at two of Defendant's high schools.  Morales worked for other school districts between 2012 and 2017, but he returned as a teacher and faculty manager at Defendant's primary high school.  Morales received a $68,000 salary and an additional $28,000 for: (a)

working without a prep hour; (b) his work as faculty manager; (c) serving as morning test supervisor; and (d) coaching softball.  In the 2017-18 school year, Morales taught both English and Spanish.  In the 2018-19 school year, Morales taught only Spanish, with one hour of study skills.

### B.    2018 School Board Elections

In November 2018, six of the seven then-existing Board members had to run to keep their seats on the Board.  In their briefs, Plaintiffs have generalized that those six members "backed policies that supported the children rather than finances and politics." *See, e.g.*, ECF No. 51, PageID.2804.  All six of those then-existing Board members lost their Board seats in the November 2018 election.  They were replaced in January 2019, more than four months before Plaintiffs were terminated. Each Plaintiff represents that he supported the defeated Board candidates in November 2018, as discussed in more detail below.

### C.    Comments Directed at Morales

Morales is Chilean, something he explained multiple times to David Hurnevich ("Hurnevich"), one of the Principals at the school at which Morales taught in the 2017-18 and 2018-19 school years.  Morales states that both Hurnevich and Leslie Kegebein ("Kegebein"), the other Principal, harassed Morales on numerous occasions. During Morales' last few days employed by Defendant, Kegebein, in the presence of

4

Hurnevich and upon seeing a photo of Morales in the yearbook, said, "That shirt is too small. You look like a stuffed burrito."

Taking the evidence in a light most favorable to Plaintiffs, Hurnevich harassed and demeaned Morales based on his ethnicity throughout his employment by Defendant, including in front of students and staff. During Morales' job interview, Hurnevich asked him, "How do you react when, and I apologize for the language, when that first student looks at you and says, Wow, you're a fat ass Mexican." Hurnevich repeatedly referred to Morales as "the Mexican" in a derogatory manner. Hurnevich also would bring up Morales whenever anything of a Hispanic nature, such as Cinco de Mayo, was mentioned.

Morales had to interact with Hurnevich daily and claims that he was subject to harassing comments everyday. Morales states that he attempted to resolve Hurnevich's harassment directly with Hurnevich, but Hurnevich contined to use derogatory slurs toward Morales. Morales states that other Defendant employees were aware of Hurnevich's harassment because they would correct Hurnevich when he called Morales "the Mexican," but no testimony or affidavit is identified by Morales. Morales states that he and Hurnevich would socialize professionally, but they were not close friends. Morales called Hurnevich "Injun," apparently because Hurnevich was Native American.

### D. Termination of Employees

Defendant maintains that, due to its financial condition, it terminated Plaintiffs and many others, and made a number of other budget cuts totally approximately $1.5 million, in May/June 2019. Concurrent with the terminations of Brown, Raspberry, and Morales, Defendant determined that it would terminate 18 other employment positions (including Fuller's), effective as of the end of the 2018-19 school year (June 30, 2019). Morales's teaching position was one of approximately eleven teachers terminated in June 2019. Teachers Kristin Baker, Colleen Bruderick, Kim Gilbreath, Alesia Dunlap, Nicole Oliver, Christina Robbins, Candance Hamilton, Tom Kozak, Anne Middleton, and Lindsey O'Donnell had their positions eliminated in June 2019.

## III. LEGAL STANDARD

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## IV.   ANALYSIS

### A.   Due Process (All Plaintiffs)

Courts undertake a two-step inquiry when analyzing a claim for the violation of procedural due process under the Fourteenth Amendment: (1) whether the plaintiff has a property interest in his/her position; and (2) determining what process (if any) is due to them. *See, e.g., Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000).

Defendant asserts that, as a matter of law, Plaintiffs are not entitled to any due process because their positions were eliminated as part of wide-ranging budget cuts. Relying on *Gragg v. Somerset Tech. College*, 373 F.3d 763, 769 (6th Cir. 2004) (holding that a government employee has no constitutionally protected interest in continued employment when the employee is laid off because his position is eliminated); *Smith v. Jefferson County Bd. of Sch. Comm'rs*, 641 F.3d 197, 216-17 (6th Cir. 2011) (holding that because the school board engaged in "a legislative activity when it made budgetary determinations that eliminated the alternative school," the board did not violate the teacher's procedural due process rights because no process was due).

Defendant states that the Board voted during an open meeting to approve all of the budget cuts that were made, cuts that involved eliminating numerous positions, including those held by Plaintiffs. Defendant argues that, as in *Smith*, the Board engaged in a legislative activity when it eliminated Plaintiffs' positions, which meant that Plaintiffs were not entitled to any process under the Fourteenth Amendment. Defendant reasons that such an action constitutes a legislative act and "legislation normally is general in its scope rather than targeted on a specific individual, and its generality provides a safeguard that is a substitute for procedural protections." *Smith*,

641 F.3d at 216 (citing *Ind. Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 710 (7th Cir. 2004)).

Defendant contends that Plaintiffs' were only three of 21 positions eliminated by the Board for budgetary reasons in May 2019, when the Board voted during an open meeting to allow Superintendent Angel Abdulahad to make $1.5 million in budgetary cuts to correct the anticipated budget deficit. Defendant states that, as part of these cuts, which were made in concert with the recommendation of Oakland Schools, the Director of Enrollment position was eliminated (Raspberry), the Athletic Director position was consolidated and handled by another person (along with other duties) (Brown), and the two high schools were consolidated, eliminating the need for one of the Spanish teachers (Morales). Defendant asserts that, as in *Smith*, the decision to institute the budget cuts was done to save money across the board and was the result of weighing budgetary priorities, which was a legislative activity. Accordingly, Defendant argues, there was no requirement that Plaintiffs be given notice or an opportunity to be heard prior to the Board's decision to eliminate their positions.

Plaintiffs argue that, unlike the defendant in *Smith*, Defendant did not eliminate an entire school when it terminated specific individuals, including Plaintiffs, for allegedly financial reasons, without informing them of the criteria used to select them

for discharge. Citing *Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1581-82 (6th Cir. 1990) (the plaintiffs, tenured faculty at a community college, were terminated due to alleged financial necessity at the college but did not receive a hearing on the existence of the financial necessity and were not informed of the criteria used to select them for discharge, so they did not receive sufficient opportunity to challenge the grounds for their dismissal). On remand, that district court determined that the defendant presented specific reasons and findings that led to the selection of the plaintiffs and that it indeed faced financial necessity. *Johnston-Taylor v. Gannon*, 974 F.2d 1338 (Table), *2 (6th Cir. 1992). Plaintiffs therefore argue that a defendant reducing staff with a property interest in continued employment must provide specific reasons and findings that led to the selection of the plaintiffs.

If it is determined that the employee has a property interest in his employment, the issue then turns to what process is due. "In the context of employment rights, the Supreme Court has explained that "the root requirement of the Due Process clause" is "that an individual be given the opportunity for a hearing before he is deprived of any significant property interest." *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004) (citation omitted).  Defendant states that "[p]re-termination hearings 'need not be elaborate.' 'The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity

to present his side of the story.'" *Id*.; *see also Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir. 1990) (same). "To require more than this prior to termination would intrude to an unwarranted extend on the government's interest in quickly removing an unsatisfactory employee." *Loudermill*, 470 U.S. at 546.

A hearing does not actually have to occur to satisfy due process rights, however, it simply must be made available. "The law is well-established that it is the opportunity for a post-deprivation hearing before a neutral decisionmaker that is required for due process. As long as the procedural requirements are reasonable and give the employee notice and an opportunity to participate meaningfully, they are constitutionally adequate." *Greer v. Detroit Pub. Sch.*, 507 F. App'x 567, 572 (6th Cir. 2012) (emphasis in original); *see also Higgins v. Jefferson County, Ky.*, 344 F. Supp. 2d 1004, 1006 (W.D. Ky. 2004) ("Pre-termination due process requires only that an employee have the opportunity to respond after being confronted, regardless if the employee fails to take the opportunity or put it to its best and intended use.").

Plaintiffs contend that Defendant mischaracterizes their meetings with Abdulahad by terming them pre-termination hearings – and suggest that Defendant's use of the word "like" demonstrates Defendant's apprehension to define those meetings as pre-termination meetings. Under the requirements of *Loudermill*, Plaintiffs' claim, their meetings with Abdulahad clearly were not pre-termination

meetings. Although they were provided written notices of termination, Defendant did not present evidence to support its claim of financial distress and Plaintiffs were not afforded an opportunity to present information and facts supporting their financial contributions to Defendant. *See Loudermill*, 470 U.S. at 546.

Plaintiffs acknowledge that, "As long as the procedural requirements are reasonable and give the employee notice and an opportunity to participate meaningfully, they are constitutionally adequate." *Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004). Plaintiffs argue, however, that Defendant has provided no evidence that any of Plaintiffs was ever provided notice that they would have an opportunity to be heard at the Board meeting in which the board voted on eliminating their positions. Plaintiffs assert that they had no opportunity to attend the hearings, to have the assistance of counsel, to call witnesses, or produce evidence on their own behalf because they were never provided notice of such a hearing. *See Clark*, 767 F.2d at 273. Plaintiffs contend that, as they did not receive a pre-termination hearing or receive a post-termination hearing, Defendant failed to provide them sufficient notice and hearing.

### 1. Raspberry

Defendant argues that Raspberry received all the process that was due. It states that Raspberry received two separate hearings before his layoff. Defendant contends

that he had a pretermination hearing before Abdulahad on May 13, 2019 and was provided with written notice of his position elimination the same day, well before the Board finalized the decision. ECF No. 27, Exs. 16 and 17. Defendant states that Raspberry was afforded a meeting with Abdulahad where he was given an opportunity to respond to the position elimination. ECF No 27, Ex. 3 at 73, 102; Ex. 7 at 132-133). Defendant asserts that there was a second "hearing" in the form of an open meeting before the Board on May 29, 2019, when the Board voted to eliminate his position. ECF No. 27, Ex. 18.  Raspberry had the opportunity to address the Board at the meeting, but he chose not to attend.  "The law is well-established that it is the *opportunity* for a post-deprivation hearing before a neutral decisionmaker that is required for due process. As long as the procedural requirements are reasonable and give the employee notice and an opportunity to participate meaningfully, they are constitutionally adequate." *Greer v. Detroit Pub. Sch.*, 507 F. App'x 567, 572 (6th Cir. 2012) (emphasis in original) (citing *Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004)). For that reason, Defendant concludes that Raspberry's opportunity to address the Board satisfied any process requirements to which he may have been entitled.

With respect to Raspberry's earlier termination due to his pursuit of a position with the Clawson schools, Defendant contends that Raspberry also received sufficient due process.  Raspberry was provided written notice of the charges and a summary of

the evidence against him. ECF No. 27, Ex. 3 at 87-88, 90-97, 102; Ex. 18; Ex. 19.  It

states that he was given several "opportunities" to defend the charges against him and

present his side of the story during two scheduled mandatory investigatory meetings.

ECF No. 27, Ex. 3 at 92; Ex. 18; Ex. 19; Ex. 15. Defendant argues that Raspberry

knowingly and purposefully chose not to attend the mandatory meetings. ECF No. 27,

Ex. 3 at 89-90. He was provided with written notice that the District terminated his

employment for insubordination and based on the unrebutted allegation of

inappropriate misconduct. ECF No. 27, Ex. 19. Defendant argues that those

opportunities to defend himself were sufficient to satisfy his due process rights, such

that his due process claim should be dismissed. Citing *Greer*, 507 F. App'x at 572.

2.   *Brown*

Defendant argues that Brown had a pre-termination like hearing before

Abdulahad, and he was provided with written notice of his position elimination before

the decision was finalized. ECF No. 33, Ex. 4 at 56-58; Ex.13; Ex. 17; Ex. 18; Ex. 21.

Defendant states that there was a second hearing before the Board – a full hearing –

when the Board voted to eliminate his position, ECF No. 33, Ex. 18, but he chose not

to attend. *See Greer*, 507 F. App'x at 572 ("it is the opportunity for a post-deprivation

hearing" that satisfies due process, not actually conducting the hearing.). As with

Raspberry, Defendant argues Brown's opportunity to meet with the Board satisfied

14

any process requirements to which he may have been entitled.  Defendant also notes

that Brown was a member of the Bargaining Unit. ECF No. 33, Ex. 4 at 48-49, but he

admittedly he did not file a grievance following his position elimination. *Id*. at 49-50.

For the reasons set forth by Defendant, the Court finds that Brown had

sufficient contractual remedies and hearing opportunities available to him, and this

fact precludes his due process claim. *See Higgins v. Jefferson County, Ky.*, 344 F.

Supp. 2d 1004, 1008 (W.D. Ky. 2004). The Court concludes that Brown failed to state

a violation of the procedural due process component of the Fourteenth Amendment.

### 3.   *Morales*

Defendant maintains that, even if the Court does not consider the Board's

elimination of Morales' position a "legislative act," his claim still fails as a matter of

law.  The Sixth Circuit has held that if satisfactory state or administrative procedures

are available in a procedural due process case, then no constitutional deprivation has

occurred despite the injury. *Jefferson v. Jefferson Cty. Pub. Sch. Sys.*, 360 F.3d 583,

587–88 (6th Cir. 2004) (citing *Hudson v. Palmer*, 468 U.S. 517, 533, (1984)). *See also*

*Greer*, 507 F. App'x at 572 ("it is the opportunity for a post-deprivation hearing" that

satisfies due process, not actually conducting the hearing).

Defendant insists that Morales also "cannot complain of a violation of

procedural due process rights when [he has] made no attempt to avail [himself] of

existing state procedures." *Boston Envtl. Sanitation Inspectors Ass'n v. City of Boston*, 794 F.2d 12, 13 (1st Cir. 1986) (citations and internal quotations omitted). "Thus, where a plaintiff fails to avail himself of contractual grievance procedures or other available state remedies (such as an administrative employee relations commission action or a state court action), he may not bring a federal claim of lack of due process." *United States ex rel. Diop v. Wayne County Cmty. College Dist.*, 242 F. Supp. 2d 497, 521 (E.D. Mich. 2003).

It is undisputed that Morales was a member of the Teachers' Union in Defendant's district. ECF No. 29, Ex. 2 at 29). The Collective Bargaining Agreement had a four-step process for addressing complaints. ECF No. 29, Ex. 7 at Art. VI. The First and Second Steps required that Morales discuss any complaints with the appropriate administrator within ten days. *Id*. at 6-). If Steps One and Two d dnot resolve the problem, then the union member (Morales) was obligated to reduce his complaint to writing and deliver it to the Superintendent. *Id*. at 7. If Step Three was unsuccessful, then Morales could pursue a formal arbitration hearing before a neutral panel of arbitrators pursuant to the rules established by the American Arbitration Association. *Id*.  Defendant contends that this post-termination process satisfies the process required under the Constitution.

Morales also had other post-termination remedies available under Michigan law. Under Michigan's Teacher Tenure Act, if a tenured teacher is discharged, he has a right of appeal to the State Tenure Commission, *see* M.C.L. § 38.104, and a "hearing shall be conducted in accordance with chapter 4 of the administrative procedures act of 1969, 1969 PA 306, MCL 24.271 to 24.287, and in accordance with rules promulgated by the tenure commission." MCL §38.104(4).

Morales, however, concedes that he did not pursue the procedures under the CBA or the Michigan Tenure Teacher Act. ECF No. 29, Ex. 2 at 79.  Since adequate state law and administrative procedures were available to Morales to remedy an employment decision, and he failed to exercise the procedures, Morales' due process claim also fails as a matter of law on this basis. *See Jefferson*, 360 F.3d at 585; *Harris v. Detroit*, No. 04-cv-40153-FL, 2006 WL 8433877, *6 (E.D. Mich. Feb. 14, 2006). Accordingly, even if Morales had a property right at the time of his termination, his failure to avail himself of contractual grievance procedures or other available state remedies bars his federal claim of lack of due process. *United States ex rel. Diop*, 242 F. Supp. 2d at 521.

## B.     Free Speech (All Plaintiffs)

Pursuant to the U.S. Constitution, the discharge of a public employee for engaging in speech protected by the First Amendment is prohibited. *Pickering v.*

17

*Board of Educ.*, 391 U.S. 563 (1968). Discharging a public employee because the employee is affiliated with a particular political party is contrary to the right of association guaranteed by the First Amendment and is prohibited conduct by a public employer. *Rutan v. Republican Party*, 497 U.S. 62 (1990). For a First Amendment retaliation claim under the Sixth Circuit, a plaintiff must establish that (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010), citing *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005); *see also Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

A plaintiff successfully demonstrates a causal connection between the adverse action and the protected conduct by offering direct or circumstantial evidence indicating that the protected conduct was a substantial or motivating factor behind the adverse action against the plaintiff. *Eckerman v. Tennesse Dept. of Safety*, 636 F.3d 202, 208 (6th Cir. 2010). If the plaintiff meets his burden of establishing retaliation, the burden shifts to defendants "to prove by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Id.* (quoting *Sowards v. Loudon Cnty., Tenn.*, 203 F.3d 426, 431 (6th Cir. 2000)). Once

this shift occurs, summary judgment is warranted if, in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant. *Id*. Unlike the *McDonnell Douglas* framework, the burden does not shift back to the plaintiff to show pretext. *Dye v. Office of the Racing Com'n*, 702 F.3d 286, 295 (6th Cir. 2012).

Defendant asserts that Plaintiffs' First Amendment retaliation claims should be dismissed for as many as four independent reasons.[2]

### 1.   *No Protected Speech or Activity*

Defendant contends that neither Raspberry nor Brown established that he engaged in a protected form of speech or association.

Raspberry testified during his deposition that he does not get involved in politics and that he did not vote in the Board election in November 2018. ECF No. 27, Ex. 3, at 106-07. He also testified that he had no political opinions regarding the old Board versus the new Board and admitted that he did not know the political differences between the two. *Id*. at 111-12. Raspberry testified that he tried to stay as far away from politics as possible. *Id*. at 113.

---

[2]Defendant also argues that Raspberry was a policymaking employee, such that Defendant was entitled to terminate him. The Court does not find it necessary to address this argument.

The Court concludes that Raspberry's political speech and association claim fails as a matter of law because his claims are devoid of possessed or expressed political views. *See, e.g., Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 58 (1st Cir. 1990), overruled on different grounds, *Educadores Purtorriquenos en Accion v. Hernandez*, 367 F.3d 61 (1st Cir. 2004) (holding that the plaintiff's political association claim failed because the plaintiff failed to present facts regarding the political contours of the plaintiff's relationship with the judge (or that the defendants knew anything about the plaintiff's politics)).

Brown admits that he did not campaign or pass out literature for any of the Board candidates. His support was limited to standing at a polling location with one of the Board candidates who lost in the November 2018 election. ECF No. 33, Ex. 1 at 108. Brown's claim is premised on his perceived association with certain of the losing Board candidates. But, Brown stated that his association with these candidates was not based on politics but his friendships with these individuals because they grew up in the same community. ECF No. 33, Ex. 4 at 87-88, 92, 106.

Brown's association with political candidates based on growing up in the same community is not a protected association under the First Amendment. *Dotson v. Abramson*, 47 F.3d 1168 at *6 (6th Cir. 1995) ("Entry into the constitutional orbit requires more than a mere relationship."); *Boger v. Wayne Cnty.*, 950 F.2d 316 (6th

Cir. 1991) (rejecting a First Amendment association claim where the plaintiff, an administrative assistant to the medical examiner, was terminated for her association with the Chief Medical Examiner because her affiliation with the medical examiner was based only on her personal alliance and personality). *See also Bluegrass Dutch Tr. Morehead, LLC v. Rowan Cty. Fiscal Court*, 734 F. App'x 322, 326 (6th Cir. 2018) (applying public concern test to association claims); *Boals v. Gray*, 775 F.2d 686, 692 (6th Cir. 1985)(same); *Bracken v. Collica*, 94 F. App'x 265, 269–70 (6th Cir. 2004)(finding two types of protected associations, one for engaging in protected conduct, and a second based on protected classification, and dismissing a First Amendment political association claim where the plaintiff's association with the Mayor was based only on working together and having a friend relationship). Accordingly, the Court dismisses Brown's First Amendment retaliation claim.

Morales testified that he supported the losing Board candidates at the polls by talking to people and handing out flyers. Morales could not recall with whom he spoke or what political information was contained in the flyers. ECF No. 29, Ex. 2 at 90-91, 93-94. Morales could not name any witness that could verify his account other than Brown, his co-plaintiff. He could not explain the political differences between the two competing slates that ran for the School Board in November 2018. *Id*. at 86-88, 89. He stated only that his support for the losing Board candidates was based

on his personal belief that the losing candidates he supported "put children first over finances." *Id*. at 99. Morales has shown enough to avoid having his First Amendment political speech and association claims dismissed for failure to engage in protected activity.

### 2.    *Defendant's Knowledge*

Defendant claims that none of the Plaintiffs established that Defendant's decision makers had knowledge of any actual or perceived political speech or association by Plaintiffs. The Sixth Circuit has held that the plaintiff must produce evidence that the defendant had actual knowledge or belief of the plaintiff's political affiliation and support for the political opponent to survive a motion for summary judgment. *See Van Huss v. Shoffner*, 81 Fed. Appx. 17, 23 (6th Cir. 2003); *Hall v. Tollett*, 128 F.3d 418, 426 (6th Cir. 1997) (holding that summary judgment for the defendant was proper since the plaintiff failed to put forth evidence showing that the defendant knew the plaintiff supported is political opponent).

Conclusory allegations of perception are insufficient to prove such a claim. *Bluegrass Dutch Tr. Morehead, LLC v. Rowan Cty. Fiscal Court*, 734 F. App'x 322, 328–29 (6th Cir. 2018). A plaintiff has the burden to establish actual, tangible proof that he was perceived to be associated with a political campaign. *Id.; Hall v. Tollett*, 128 F.3d 418 (6th Cir. 1997). Even if a court takes a plaintiff's allegations as true and

finds that the plaintiff engaged in protected associational conduct, his claim will fail if he cannot prove that the defendant had the requisite knowledge or belief of such associational conduct. *Id.*

The Court finds that, because Raspberry's claims are devoid of possessed or expressed political views, Raspberry could not show that Defendant knew anything about his political preferences. *Correa-Martinez*, 903 F.2d at 58 (holding that the plaintiff's political association claim failed because the plaintiff failed to present evidence that the defendants knew anything about his politics).

Brown argues that Board member Kimble was responsible for eliminating Brown's position because of Brown's alleged perceived affiliations. This argument fails because Kimble was not a decision maker. Brown was not actively campaigning at the election site in November 2018, and he offered no evidence that Kimble, the Superintendent, or anyone, were even aware of his political opinions or political support, which is fatal to his claim. *See Bluegrass Dutch Tr. Morehead, LLC*, 734 F. App'x at 328–29 ("Plaintiff has not provided any evidence beyond speculation that all, or any, member of the Fiscal Court aside from possibly Ray White even knew that plaintiff had supported Blevins in the election."). Accordingly, there was no notice to those who may have seen Brown that he was supporting a particular political viewpoint or candidate.

Brown's argument that his association with these board candidates was known because of pictures he posted with these candidates on Facebook is not sufficient. Brown testified that he blocked Kimble on social media and that Superintendent Abdulahad was in pictures with the same Board candidates on social media. ECF No. 33, Ex. 4 at 162. Abdulahad, however, was not terminated but was promoted to Superintendent by the new Board (the same one that terminated Brown). Brown's claim that Madison Heights is a small town, so his alleged association was "common knowledge" also fails as a matter of law. *Hall, supra.*

Defendant notes that Morales simply offered inadmissible hearsay that the winning candidates knew that he was their supporting the losing candidates, as that "evidence" consisted of rumors he heard in the community.  ECF No. 29, Ex. 2 at 90-91, 93-94. Morales did not offer any admissible evidence to support this conclusory allegation, and he admits that he did not see any of the winning Board candidates at the polling location. *Id.* Morales also could not recall what he specifically heard from members of the community that gave him the impression that the winning Board members knew Morales was at the polling stations. *Id.* at 90.

For the reasons stated above, the Court finds that Plaintiffs have failed to establish a genuine dispute of material fact that Defendant had knowledge of alleged

protected First Amendment activity by any Plaintiff and dismisses all of their First Amendment claims.

## C.    Breach of Contract (Brown and Raspberry)

Defendant argues that the claims for breach of just cause employment contract brought by Brown and Raspberry both fail because their positions were eliminated because of an economically necessitated reduction in force, which constitutes just cause under Michigan law. Relying on *Cherry v. Thermo Electron Corp.*, 800 F. Supp. 508, 514 (E.D. Mich. 1992) (citing *McCart v. J. Walter Thompson USA, Inc.*, 437 Mich. 109; 469 N.W.2d 284 (1991)); *Nora v. Carrier Corp*, 861 F.2d 457, 461 (6th Cir. 1988). In *Cherry*, the court stated:

> Even if one could read Plaintiff's complaint to allege a breach of contract independent of the claim for age discrimination, one is faced with the undisputed fact that Cherry was discharged due to an economically necessitated reduction in force. Such a reduction in force constitutes just cause under Michigan law. *McCart v. J. Walter Thompson USA, Inc.*, 437 Mich. 109, 469 N.W.2d 284 (1991) (where defendant produces undisputed evidence that plaintiff was terminated pursuant to work force reduction necessitated by economic conditions, there is no issue of fact to be litigated and summary judgment should be granted).

*Cherry*, 800 F. Supp. at 514.  Defendant states that the positions held by Brown and Raspberry were eliminated due to economic necessity, so it is entitled to summary judgment for their breach of contract claims.  For the reasons stated above, the Court agrees.

25

*1.    Brown*

Defendant also argues that an existing school board cannot bind subsequent school boards into a just cause contract when doing so would circumvent and negate the legitimate power of future school boards to discharge school employees under its statutory authority. *See Willoughby v. Village of Dexter*, 709 F. Supp. 781, 787 (E.D. Mich. 1989) (citing *Johnson v. City of Menominee*, 173 Mich. App. 690, 964; 434 N.W.2d 211 (1988)). In such a case, the alleged contract would be void. *Id*. Defendant urges the Court to declare Brown's November 2018 contract void for this reasons, particularly because of several suspicious facts and circumstances surrounding its formation that indicate the contract was not entered into in good faith. Defendant notes that it was an eleventh-hour employment contract, containing a three-year term and a substantial buyout, was written just prior to the school board election. The Board then approved the contract, with the six of the School Board members that voted in approval this contract did so after being defeated in the election. Defendant states that the new administration and Board discovered substantial issues with the District's finances, which lead to an FBI investigation for misappropriation of funds and substantial budget cuts. Defendant argues that the former Superintendent and School Board members should not be able to bind its

successors to just-cause employment contracts that thwart their ability to remedy Defendant's fiscal stress.

### 2. Raspberry

On May 9, 2019, Raspberry attended a meeting with Abdulahad and Munofo. During the meeting, Raspberry was informed that the Director of Enrollment position was going to be eliminated "due to financial conditions and economic necessity." ECF No. 50, Ex. 7. Raspberry was not terminated during this meeting, and he was told that he would be paid full salary until his termination effective as of June 30, 2019. Raspberry was permitted to use vacation and sick time until the end of the school year. The Board approved the elimination of the Director of Enrollment position on May 29, 2019. The Director of Enrollment position was never refilled and remains eliminated to this day.

Prior to April 2019, Abdulahad had instructed Raspberry to stop directly recruiting students, and Raspberry indicates that he understood that his position might be terminated. In April 2019, he began working full-time at Chrysler and continued to do so until October 2020. After receiving notice of his position elimination on May 9, 2019, Raspberry also contacted the superintendent of Clawson Schools. During the meeting, Raspberry explained to the superintendent of Clawson that his Director of

Enrollment position at Defendant had been cut, and Raspberry offered to provide his recruiting services to Clawson in exchange for employment.

Defendant states that, following that meeting, the superintendent of Clawson called Abdulahad and to inform him that one of his employees was trying to take students away from Defendant and offer them to another district. Raspberry was still an employee of Defendant at that time, and he has acknowledged that attempting to actively recruit students away from Defendant to a neighboring district would be contrary to the Enrollment Director duties for which he was being paid at the time. Abdulahad testified that he was very concerned about the serious allegations since it implied that Raspberry was intentionally causing financial harm to the Defendant and breaching his contractual obligations owed to the District. Abdulahad told Munofo to schedule an investigatory meeting with Raspberry to get Raspberry's side of the story.

On May 22, 2019, Munofo emailed Raspberry informing him that a mandatory investigatory meeting was scheduled for May 23, 2019 at 8:30 a.m., although it does not appear Munofo communicated to Raspberry the basis for the investigation or meeting. Raspberry did not attend this mandatory meeting. Defendant then sent a written notice to Raspberry that, due to Raspberry's failure to attend the mandatory meeting on May 23, 2019, Defendant had rescheduled the investigatory meeting for May 28, 2019, at 10:00 a.m. That email stated, in pertinent part:

You failed to attend this pre-scheduled meeting, although we waited for you until 9:15 a.m. Therefore, we have scheduled another meeting on Tuesday, May 28, 2019 at 10:00 a.m. Again, your failure to attend this meeting will result in discipline up to and including termination.

It is also important for you to attend our investigatory meeting so that we can discuss the issues with you and obtain your side of the story. Your refusal to do so will deprive us of your thoughts about the issue and your side of the story—forcing us to move forward without the benefit of your input.

ECF No. 27, Ex. 18.  Raspberry was aware that his failure to attend the May 28th meeting could result in his termination, and he did not attend the May 28th meeting.

On May 29, 2019, Raspberry received written notice of his termination. The written notice contained a detailed description of the reasons for Raspberry's termination:

The School District is therefore terminating your employment for your insubordination in refusing to attend the aforementioned scheduled meetings, at which your attendance was directed, and further for your reported unprofessional and inappropriate conduct described above, which at this point is unrebutted.

ECF No. 27, Ex. 19. The Board approved Raspberry's termination on June 3, 2019.

Defendant tenders the unpersuasive argument that Raspberry was an at will employee because the termination provision of his contract does not state that he "was only terminable for cause."  Defendant's argument ignores that the contract identifies only two bases for Defendant to terminate Raspberry upon 60 days written notice: (1)

29

for economic necessity; and (2) if Raspberry "failed to perform as required or desired."

Defendant argues and provides contemporaneous evidence that Raspberry was terminated on May 9, 2019 due to economic necessity.  It is well-established law that an economically necessitated reduction in force constitutes just cause under Michigan law. *See, e.g., Cherry v. Thermo Electron Corp.*, 800 F. Supp. 508, 514 (E.D. Mich. 1992) (citing *McCart v. J. Walter Thompson USA, Inc.*, 437 Mich. 109 (1991)); *Nora v. Carrier Corp.*, 861 F.2d 457, 461 (6th Cir. 1988).  This is true even if the employment contract expressly provides that the employee is subject to termination only for just cause. *Reisman v. Regents of Wayne State Univ.*, 188 Mich.App. 526, 470 (1991) (budget crisis that required workforce reductions constituted economic necessity).  Bona fide economic reasons for discharge constitute just cause under the types of recovery theories in *Toussaint v. Blue Cross & Blue Shield*, 408 Mich 579 (1980). As Raspberry acknowledges, to hold otherwise would impose an unworkable economic burden on employers to stay in business to the point of bankruptcy. *Bhogaonker v. Metropolitan Hosp.*, 164 Mich.App. 563 (1987); *Friske v. Jasinski Builder's, Inc.*, 156 Mich.App. 468 (1986).

Raspberry claims there is a genuine issue of fact regarding the validity of Defendant's proofs that adverse business conditions existed and that the elimination

of Raspberry's position was necessitated by those conditions. Citing ECF No. 50, Ex. 11; Ex. 12 at 33-34, 51-53, 60, 67, 73-74, 84. Raspberry argues, but offers no evidence, that Defendant was not facing, at the time of his termination, a budget crisis. Raspberry cites a couple of instances where Defendant made expenditures or gave up revenue, specifically by: (a) withdrawing from the "very profitable" SOARCE program; (b) eliminating the Director of Enrollment position that provided significant funding; (c) purchasing a $30,000 unusable lot; (d) purchasing $61,000 in playground equipment; (e) awarding a $10,000 bonus for Abdulahad; and (f) giving "raises to multiple bargaining units." ECF No. 51, PageID.2827-28).   The Court finds that Raspberry has failed to meet his burden to introduce evidence establishing that Defendant's economically necessary reduction in force was not bona fide. *Hagen v. Howmet*, 840 F. Supp. 480, 487 (W.D. Mich. 1994).

Raspberry also believes that he has raised a question of material fact as to whether Defendant's proffered reason for his termination is pretextual. See *Rood*, 444 Mich. at 144, n.3. Raspberry therefore asserts that Defendant's proffered economic-necessity defense is a question for the jury. See *Ewers*, 178 Mich. App. at 379. Raspberry contends that Defendant's new Board had a closed-door meeting with Harwood, where they discussed wanting to terminate Raspberry, Ex. 1 at 110, and Abdulahad worked with Harwood, who already disliked Raspberry, in determining

who to terminate. Ex. 9 at 15. For these reasons, Raspberry argues that Defendant is not entitled to summary judgment.

Defendant contends that there is not a genuine issue of material fact that Raspberry's employment ultimately was terminated for just cause. Raspberry admits that he spoke with the Clawson superintendent regarding a position there, a position that would have required recruiting students. Raspberry also testified that recruiting students away from Defendant, while he was still employed, would breach his employment contract. But, Raspberry testified that at no time did he contact any of Defendant's students or families to recruit them for Clawson. Raspberry admits that he received notice of – and chose not to attend – mandatory meetings on May 23 and May 28, 2019 with Abdulahad and Munofo.

Defendant states that it was this series of repeated acts of insubordination that led to Raspberry's immediate removal by Defendant for just cause before June 30, 2019. Raspberry acknowledged that he was insubordinate by refusing to attend mandatory investigatory meetings with Abdulahad and that his insubordination could result in discipline. Defendant argues that Raspberry cannot refute the "for cause" reasons for his early termination when he admits that conduct. *Maize v. State Farm Mut. Auto Ins. Co.*, 190 Mich. App. 106, 109-110 (1990). For those reasons, the Court dismisses Raspberry's breach of just cause contract claim.

Raspberry contends that, even if his conduct was a breach of his contract, Defendant breached first when it informed him that it was terminating him without cause and eliminating his position. The general rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform. *Flamm v. Scherer*, 198 N.W.2d 702, 706 (1972).  Raspberry's argument is only plausible if there was no basis for Defendant to terminate him due to economic necessity, something that he has not shown.

For the reasons set forth above, the Court finds that there is no genuine dispute of material fact that Raspberry was terminated for just cause and that claim is dismissed.

### D.    **Ethnic Discrimination and Harassment (Morales Only)**

*1.    Discrimination*

ELCRA prohibits discrimination in employment.

#### a.    **Direct Evidence**

Morales contends that there is direct evidence of discrimination with respect to Defendant's treatment of him, specifically that Hurnevich repeatedly referred to Morales as "the Mexican."  In support of that argument, Morales cites *Debrow v. Century 21 Great Lakes*, 620 N.W.2d 836 (Mich. 2001).  In *Debrow*, the court held in an age discrimination lawsuit that summary disposition was improper because the

33

plaintiff testified that, "**in the conversation in which he was fired**, his supervisor told him that he was 'getting too old for this s***.'" *Id*. (emphasis added). Morales' direct evidence argument is not persuasive.  In this case, there was no indication that anyone referred to Morales as "the Mexican" or in any other ethnic, derogatory, or discriminatory manner when – or as the basis for – terminating him.

### b.    Prima Facie Case of Discrimination

In an action alleging race/national origin discrimination based on indirect evidence, the Michigan Supreme Court directs lower courts to apply the *McDonnell Douglas* framework. *Hazle v. Ford Motor Co.*, 464 Mich. 456, 463 (2001). Under this framework, the plaintiff must first establish a prima facie case of discrimination by showing that: (1) he was a member of a protected group; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) he was replaced by a non-group member. *See, e.g., Lytle v. Malady*, 458 Mich. 153, 117-18 (1998) (emphasis added).

Defendant argues that Morales cannot establish that he was replaced by a non-group member because Morales' "former position was eliminated due to an economically necessary reduction in the work force." ECF No. 29, PageID. 611. *See Lytle*, 458 Mich. at 177-178 n. 27 (quoting *Barnes v. GenCorp, Inc.*, 896 F2d 1457, 1465 (6th Cir. 1990)); *Sahadi v. Reynolds Chemical*, 636 F.2d 1116 (6th Cir. 1980).

Morales asserts, however, that just two months after his termination, Defendant posted an opening for a foreign language teacher, making it clear that Morales' position was not eliminated. Citing *Cumpiano v. Banco Santander*, 902 F.2d 148, 155 (1st Cir. 1990) (holding that a plaintiff can satisfy the replacement requirement merely by showing that the employer had a continued need for someone to do the same job after the plaintiff left).

Defendant counters that a position mirroring Morales' position was not re-posted after Morales' position was eliminated.  Defendant notes that Morales was a full-time Spanish language teacher only, whereas the position posted by Defendant after Morales' termination was for a .5 ESL (English as a Second Language) and .5 foreign language teacher.  That position, Defendant states, required that the candidate have an ESL endorsement, which Morales did not have (nor was he an ESL teacher). For this reason, the Court grants Defendant's motion for summary judgment on Morales' ethnic discrimination claim.

   *2.    Harassment*

To establish a claim for racially (ethnically) hostile environment, Plaintiff must prove: (1) severe or pervasive racial harassment; and (2) that the employer had notice of the harassment but failed to take corrective action. *Chambers v. Trettco, Inc.*, 463 Mich. 297, 318-319 (2000); *Downey v. Charlevoix Co. Bd. of Cnty. Road Com'n*, 227

Mich App 621, 629 (1998). Defendant argues that Plaintiff cannot prove either of the above elements.

In *Clay v. United Parcel Serv., Inc.*, 501 F3.d 695, 707 (6th Cir. 2007), the Sixth Circuit stated:

> The severe or pervasive requirement has both an objective and a subjective component. *Harris*, 510 U.S. at 21-22, 114 S.Ct. 367. It requires the court to examine, under the totality of the circumstances, "'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance.'" *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006) (alterations in original) (quoting *Harris*, 510 U.S. at 23, 114 S.Ct. 367).
>
> Although the question of "[w]hether conduct is severe or pervasive is 'quintessentially a question of fact,'" *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir.2006) (quoting *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999)), we have earlier affirmed grants of summary judgment, determining that as a matter of law, the conduct complained of was not sufficiently severe or pervasive. *See, e.g., Smith v. Leggett Wire Co.*, 220 F.3d 752, 760-61 (6th Cir. 2000); *Burnett v. Tyco Corp.*, 203 F.3d 980, 984-85 (6th Cir.), cert. denied, 531 U.S. 928, 121 S.Ct. 307, 148 L.Ed.2d 246 (2000).

In *Clay*, the plaintiff had "not alleged that any racially derogatory comments were made in the workplace." *Clay*, 501 F.3d at 706.  The *Clay* court concluded that the incidents the plaintiff complained of amounted to "mere offensive utterances," which were not actionable under Title VII. *Clay*, 501 F.3d at 706.

Defendant asserts that Morales' allegations are nothing more than ordinary, trivial workplace banter between "suspected friends"—in which Morales admits he participated by hurling insulting racial slurs at Hurnevich. ECF No. 29, Ex. 2 at 83. Defendant notes that Morales has admitted that the alleged banter did not interfere with the ability to do his job, which precludes a hostile environment claim. *Id*. at 104. Defendant also contends that, taking Morales' allegations as true, it cannot be said that the incidents complained about are either "severe" or "pervasive." Defendant notes that occasional insults, teasing, or episodic instances of ridicule are not enough to create liability because they do not permeate the workplace and change the nature of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted). An employer's conduct is not hostile merely because it is "unpleasant, harsh, combative or difficult." *Benette v. Cinemark USA, Inc.*, 295 F. Supp. 2d 243, 250 (W.D.N.Y. 2003). It argues that courts have found far more egregious (including the use of racial slurs) and pervasive conduct than that complained of by Morales does not establish an actionably hostile work environment.

Morales believes that the facts in *Clay* stand in stark contrast to the facts in this case, where: (1) Morales claims Hurnevich "referred to" Morales as a "fat ass Mexican" during Morales' job interview; and (b) Hurnevich referred to Morales as "the Mexican" "every opportunity [Hurnevich] got," in front of other teachers, staff,

and students.  Accepting Morales' claims as accurate, the Court should finds that there is a genuine dispute of material fact as to whether the harassment was severe and pervasive.

Morales asserts that Hurnevich's harassment was so open and pervasive, Defendant had constructive notice of the harassment.  Morales argues that, for those reasons, Defendant should have known about the ethnic harassment "had it but opened its corporate eyes." *Sharp v. City of Houston*, 164 F.3d 923, 930 (5th Cir. 1999).  The Court agrees.  For these reasons, the Court should find that there is a genuine dispute whether Defendant had notice of the harassment and failed to take action.  The Court therefore denies Defendant motion for summary judgment with respect to Morales' hostile environment claim.

## V.   CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment with respect to Raspberry, ECF No. 27, is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment with respect to Morales, ECF No. 29, is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Defendant's Motions for Summary Judgment with respect to Brown, ECF No. 33, is GRANTED.

IT IS FURTHER ORDERED that Morales's claim for hostile environment REMAINS before the Court, but all other claims by Raspberry, Morales, and Brown are DISMISSED.

Dated: May 24, 2023          s/Denise Page Hood
                             DENISE PAGE HOOD
                             UNITED STATES DISTRICT COURT